IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRIAN J. KOSICKI, ) | |
| TONYA M. KOSICKI, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | CIVIL ACTION NO. 3:12-176 |
| v. ) | JUDGE KIM R. GIBSON |
| ) | |
| NATIONSTAR MORTGAGE, LLC, ) | |
| CHICAGO TITLE INSURANCE ) | |
| COMPANY, FIDELITY NATIONAL ) | |
| FINANCIAL, INC., AMTRUST ) | |
| FINANCIAL CORPORATION d/b/a ) | |
| AMTRUST BANK, FIDELITY CLOSING ) | |
| SERVICES, LLC, FANNIE MAE, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER OF COURT

### I.    SYNOPSIS

Pending before the Court is Defendants Nationstar Mortgage, LLC ("Nationstar") and

Federal National Mortgage Association ("Fannie Mae," collectively with Nationstar,

"Defendants") Motion to Dismiss For Lack of Subject Matter Jurisdiction and Failure to State a

Claim Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (Doc. No. 3).

Plaintiffs Brian J. Kosicki and Tonya M. Kosicki (collectively, "Plaintiffs") did not file a

response in opposition to Defendants' motion, but rather filed a Motion to Remand Case to the

Court of Common Pleas of Cambria County, Pennsylvania (Doc. No. 6), of which Defendant

Fannie Mae[1] opposes (See Doc. No. 11). For the reasons that follow, the motion to dismiss is

---

[1] Fannie Mae removed the case, *Kosicki, et al. v. Nationstar Mortgage, LLC, et al.*, No. 2009-04945, from
the Court of Common Pleas of Cambria County, Pennsylvania to the United States District Court for the
Western District of Pennsylvania pursuant to 28 U.S.C. §§ 1441 and 1446, based on federal subject
matter jurisdiction pursuant to 12 U.S.C. § 1723a(a) and diversity jurisdiction pursuant to 28 U.S.C. §
1332. (See Doc. No. 1).

1

**GRANTED** with respect to Defendants Nationstar and Fannie Mae, and Plaintiffs' motion to remand is **GRANTED** in accordance with this Memorandum.

## II.    BACKGROUND

This case arises from Plaintiffs' alleged refinancing in November 2008 of their property located in Patton, Pennsylvania. (Doc. Nos. 1-4 at 2; 5 at 3). The refinance involved AmTrust Financial Corporation d/b/a AmTrust Bank (hereinafter, "AmTrust"), which loaned Plaintiffs the amount of $129,000 in return for an executed mortgage and note with Plaintiffs' real property[2] listed as collateral. (Doc. Nos. 1-4 at 2; 5 at 3). Under this refinance, Plaintiffs were to receive $47,026.04 in cash. (Doc. Nos. 1-4 at 3; 5 at 3). Defendant Fidelity Closing Services, LLC[3] served as the closing agent for AmTrust and allegedly issued Plaintiffs a check in the amount of $47,026.04. (Doc. Nos. 1-4 at 6; 5 at 4). Plaintiffs' alleged injury in this case arises from the allegation that Fidelity absconded with these funds. Specifically, Plaintiffs contend that after attempting to cash the check, they received notice that there were "insufficient funds ... available ," in the maker's (Fidelity Closing Services, LLC) account to cover the check. (Doc. No. 1-4 at 6). Plaintiffs have alleged that "[d]espite not receiving the proceeds from the refinance, Plaintiffs have paid all sums due and payable pursuant to the terms of the Mortgage and Note ...." (Id. at 7).

---

[2] Listed as 1175 Carroll Road, Patton, PA 16668. (See Doc. No. 1-4 at 26. 41).

[3] There is a dispute between the parties as to the existence of this corporate entity. Plaintiffs contend that the company is still doing business because it is listed on the Pennsylvania Department of State's website as an active corporation with a registered office address. (See Doc. No.6 at 6-1). Defendant Fannie Mae contends, however, that the company is no longer a going concern because its principal officer is incarcerated, its listed business phone is no longer in service, and all mail sent to its listed mailing business address is returned as undeliverable. (See Doc. No. 11 at 8). As the Court will address below, whether Fidelity Closing Services, LLC is a now-defunct entity may inform the determination of the motion to remand. Importantly, however, it should be noted that the incarceration of its principal is largely based upon the type of malfeasance Plaintiffs allege took place in this case.

2

Subsequently, Plaintiffs initiated this lawsuit in October 2009 in the Court of Common Pleas of Cambria County against AmTrust, Ticor Insurance Services, Inc., Ticor Title Insurance Company, Fidelity National Insurance Services, Inc., and Fidelity National Financial, Inc., and Fidelity National Title Group. (See Doc. No. 1-5 at 33-34). Plaintiff's complaint alleged several different claims including breach of contract, unjust enrichment, restitution, and conversion. (Doc. No. 5 at 4). Then, on December 4, 2009, AmTrust ceased doing business and the Federal Deposit Insurance Company ("FDIC") was appointed as receiver pursuant to the Federal Financial Institutions Reformation, Recovery, and Enforcement Act of 1989 ("FIRREA"), 12 U.S.C. § 1821. (Doc. Nos. 1-4 at 7; 5 at 4). The next day, the FDIC transferred, "substantially all of the assets and almost none of the liabilities of AmTrust," to New York Community Bank pursuant to a Purchase and Assumption Agreement (the "P & A Agreement"). (Doc. No. 5 at 5). The P & A Agreement expressly stated that AmTrust's liabilities were retained by the FDIC in its capacity as receiver for AmTrust.[4] (See Doc. No. 3-6).

Plaintiffs allege that in February 2010, the FDIC provided them with notice that AmTrust no longer owned Plaintiffs' mortgage and note, and that these were now, "owned by an investor ... and being serviced by a division of New York Community Bank." (Doc. No. 1-4 at 7). Plaintiffs then filed an amended complaint naming Nationstar as a Defendant,[5] alleging that they

---

[4] In particular the Agreement provided that the FDIC would "hold harmless the Indemnitees against any and all costs, losses, liabilities, expenses (including attorney's fees) incurred prior to the assumption of defense by the Receiver [FDIC] ...." (Doc. No. 3-6 at 37). Specifically, the assuming bank would not be responsible for, "claims based on any action or inaction prior to Bank Closing of the Failed Bank, or the directors, officers, employees or agents as such, or any Subsidiary or Affiliate of the Failed Bank," or for any "claims based on any malfeasance, misfeasance, or nonfeasance of the Failed Bank ...." (Id. at 38).

[5] The Court notes that Plaintiffs have listed Nationstar Mortgage, LLC and Nationstar Mortgage Properties, LLC as two separate defendants in this case. Defendants Nationstar Mortgage, LLC and Fannie Mae aver, however, that Nationstar Mortgage Properties, LLC does not exist as a separate entity. While the Court does not make a determination as to the existence of Nationstar Mortgage Properties, LLC or as to whether it was properly served in this case, it will only refer to any and all Nationstar

3

did not become aware that Nationstar became the successor in interest to AmTrust as owner of the mortgage and note until January 2011. (Doc. No. 1-4 at 7). Defendants, however, aver that, "Nationstar never purchased the Loan," but was rather only assigned the, "servicing rights to the Loan ... from the FDIC as receiver for AmTrust," pursuant to a separate purchase and sale agreement that was executed on September 3, 2010. (Doc. Nos. 5 at 6; 3-11 to 3-16).

Nationstar was added as a defendant based upon the theory that as a successor in interest to AmTrust via the FDIC, Nationstar could be held liable. (Doc. Nos. 1-9, 1-10). In May 2011, the FDIC published in the Federal Register a notice of "Determination of Insufficient Assets to Satisfy Claims Against Financial Institution in Receivership," for AmTrust Bank. (Doc. No. 3-9 at 9). Specifically, the FDIC, "determined that insufficient assets exist in the receivership of AmTrust Bank, Cleveland, Ohio, to make any distribution to general unsecured claims, and therefore such claims will recover nothing and have no value." (Id.). The FDIC provided a copy of this notice as well as a notice of improper service of litigation upon the Plaintiffs and their attorney subsequent to May 2011, but no later than February 2012. (Id. at 3-8). In this notice of improper service, the FDIC made clear the administrative process for receivership claims against AmTrust pursuant to FIRREA. (Id. at 6-8). Specifically, the FDIC spelled out in its notice that while, "[t]he time for filing administrative claims against the Receiver expired on March 10, 2010 (the "Claims Bar Date")," it would still, "consider a late filed claim under certain circumstances," and give Plaintiffs the opportunity for any submitted claim to be reviewed under

---

defendants in this case as one entity, and any determinations made as to one Nationstar defendant will apply to all Nationstar defendants in this case, if indeed both entities in fact do exist. As will be discussed below, the allegations and Counts asserted against these defendants are the same, and any protection afforded under FIRREA to one entity would necessarily be afforded to the other entity.

4

the administrative process set up by FIRREA.[6] (Id. at 6). In addition to providing Plaintiffs with notice of the mandatory FIRREA administrative process, the letter also indicated that any judicial determination or judgment in Plaintiffs favor would be moot, "because the receivership estate ha[d] insufficient assets to pay the claims of any general unsecured creditors." (Id.).

Subsequently, in April 2012, Plaintiffs became aware that Fannie Mae is in fact the current owner and holder of the mortgage and note, and filed a Complaint Against Additional Defendant alleging five counts against Fannie Mae. (Doc. Nos. 1-2 at 8; 5 at 6). Fannie Mae then removed the action to this Court on August 24, 2012. To date, there has been no indication that Plaintiffs ever filed a claim with the FDIC concerning their allegations against AmTrust. Shortly after Fannie Mae's removal to this Court, Defendants filed the instant motion to dismiss and Plaintiffs filed their motion to remand. The motions have been fully briefed and are now ripe for determination.

## III. STANDARD OF REVIEW

Defendants assert two bases for their motion to dismiss: lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and failure to state a claim under Rule 12(b)(6). Plaintiffs request that this case be remanded to Pennsylvania State Court. The Court will discuss the relevant standards below.

---

[6] Additionally, the FDIC included language in this notice in bold, capital letter typeface indicating: "IF YOU DO NOT FILE A CLAIM YOU WILL HAVE NO FURTHER RIGHTS OR REMEDIES WITH RESPECT TO YOUR CLAIM, INCLUDING PURSUING ANY LITIGATION AGAINST THE RECEIVER." (Doc. No. 3-9 at 6).

5

### A. Motion to Dismiss Pursuant to 12(b)(1)

"At issue in a Rule 12(b)(1) motion is the court's 'very power to hear the case.'" *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 (3d Cir. 2006) (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). Consequently, a court must grant a motion to dismiss under Rule 12(b)(1) if it lacks subject matter jurisdiction to hear a claim. *In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*, Nos. 10-3046 and 10-3047, 2012 U.S. App. LEXIS 9832, *14 (3d Cir. May 16, 2012). In evaluating such a motion, a court must first determine whether the movant presents a facial or factual challenge. *Id.* at *15 (citing *Mortensen*, 549 F.2d at 891).

Where a defendant brings a facial challenge, the court must accept as true the allegations contained in the complaint. See *Petruska*, 462 F.3d at 302. Instantly, however, Defendants have presented a factual challenge to this Court's subject matter jurisdiction by attacking this Court's jurisdictional power to hear the case. See *CNA v. United States*, 535 F.3d 132, 139 (3d Cir. 2008) (noting that, "a factual attack concerns 'the actual failure of [a plaintiff's] claims to comport [factually] with the jurisdictional prerequisites.' ") (quoting *United States ex rel. Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir. 2007)). Consequently, the Court may "consider affidavits, depositions, and testimony to resolve factual issues bearing on jurisdiction." *Gotha v. United States,* 115 F.3d 176, 179 (3d Cir.1997); see also *Mortensen*, 549 F.2d at 891–92 (explaining that because a trial court's power to hear a case is at issue in a factual 12(b)(1) motion, the court is free to weigh evidence beyond the plaintiff's allegations). Additionally, "[i]n the typical 'factual' attack, the plaintiff's allegations are not controlling, but are mere evidence on the issue to be considered by the trial court. The court may also consider exhibits outside the pleadings." *Rhoades v. United States*, 950 F. Supp. 623, 628 (citing

*International Ass'n of Machinists & Aerospace Workers v. Northwest Airlines, Inc.*, 673 F.2d 700, 711 (3d Cir. 1982)). Under this standard, " 'no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.' " *Davis,* 2003 WL 21219821, at *1 (quoting *Carpet Group Intern. v. Oriental Rug Importers, Ass'n.,* 227 F.3d 62, 69 (3d Cir.2000)).

## B. Motion to Dismiss Pursuant to 12(b)(6)

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Federal Rule of Civil Procedure 12(b)(6) allows a party to seek the dismissal of a complaint or portion of a complaint for failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). In order to avoid dismissal under Rule 12(b)(6), a pleading party's complaint must provide "enough factual matter" to allow the case to move beyond the pleading stage of litigation; the pleader must "'nudge [his or her] claims across the line from conceivable to plausible.'" *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234-35 (3d Cir. 2008) (quoting *Bell Atlantic Co. v. Twombly*, 550 U.S. 544, 556, 570 (2007)).

While the decisions of the United States Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), represented a significant change in federal pleading standards, the United States Court of Appeals for the Third Circuit has provided clear guidance to district courts. To determine the sufficiency of a complaint under the pleading regime established by *Twombly* and *Iqbal*, a court must take the following three steps:

First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Iqbal*, 129 S. Ct. at 1947. Second, the court should identify allegations

7

that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 1950. Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.*

*Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010).

A claim is plausible on its face when the complaint "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 263 n.27 (3d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678). In determining whether the well-pleaded factual allegations plausibly give rise to an entitlement for relief, the court must be mindful that the matter pleaded need not include "detailed factual allegations." See *Phillips*, 515 F.3d at 231 (quoting *Twombly*, 550 U.S. at 555). Moreover, a pleading party "need only put forth allegations that 'raise a reasonable expectation that discovery will reveal evidence of the necessary element[s].'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009). However, the factual allegations "must be enough to raise a right to relief above the speculative level." *Phillips*, 515 F.3d at 232 (quoting *Twombly*, 550 U.S. at 555). Rule 8(a)(2) "requires a 'showing' rather than a blanket assertion of an entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 556 n.3). "[L]egal conclusions" and "[t]hreadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not suffice" as bona fide factual material. *Iqbal*, 556 U.S. at 678. If a district court determines that a complaint is vulnerable to 12(b)(6) dismissal, the court must permit a curative amendment, irrespective of whether Plaintiff seeks leave to amend, unless such amendment would be inequitable or futile. *Phillips*, 515 F.3d at 236.

8

## C. Removal and Motion to Remand

Section 1441 of Title 28, United States Code, governs the removal of a case to federal court. Generally, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant ..., to the district of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). "The removal statutes 'are to be strictly construed against removal and all doubts should be resolved in favor of remand.' " *Boyer v. Snap–On Tools Corp.,* 913 F.2d 108, 111 (3d Cir.1990) (quoting *Steel Valley Auth. v. Union Switch & Signal Div.,* 809 F.2d 1006, 1010 (3d Cir.1987) (other citations omitted)); *Sikirica v. Nationwide Ins. Co.,* 416 F.3d 214, 219 (3d Cir.2005). Where a motion for remand is filed, the defendant has the burden of proving that removal was proper. *Sikirica,* 416 F.3d at 219 (citing *Samuel–Bassett v. KIA Motors Am., Inc.,* 357 F.3d 392, 396 (3d Cir.2004)). Additionally, because federal courts are courts of limited jurisdiction and because subject matter jurisdiction may never be waived, Fed. R. Civ. P. 12(h), the Court may raise the issue *sua sponte.* See *Meritcare v. St. Paul Mercury Ins. Co.*, 166 F.3d 214, 217 (3d Cir. 1999) (a district court may "address the question of jurisdiction even if the parties do not raise the issue").

## IV. DISCUSSION

Defendants assert that this case must be dismissed pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction because FIRREA deprives this Court of jurisdiction to hear Plaintiffs' claims. Additionally, Defendants argue that Plaintiffs have failed to state proper breach of contract and unjust enrichment claims, and as such these should be dismissed under Rule

9

12(b)(6). In response, Plaintiffs have submitted a motion to remand this case to the Pennsylvania Court of Common Pleas of Cambria County, of which Defendant Fannie Mae has opposed. For the following reasons, the Court will grant Defendants' motion to dismiss on the basis of lack of subject matter jurisdiction and accordingly refrain from ruling on Defendants' 12(b)(6) grounds, and grant Plaintiff's motion to remand.

### A. Motion to Dismiss Pursuant to Rule 12(b)(1)

In this matter, Defendants assert a factual attack under Rule 12(b)(1) by alleging that FIRREA bars this Court from adjudicating the claims asserted by Plaintiffs. Specifically, Defendants argue, that as successor in interest to AmTrust Bank, they are entitled to FIRREA's mandatory administrative claims process once the FDIC placed the Bank into receivership. (See Doc. No. 3-1 at 9-14). Accordingly, Defendants aver, Plaintiffs' failure to exhaust the statutory remedy now bars them from bringing these claims in court.

FIRREA is a federal statute that creates a procedure for administering claims filed against failed depository institutions. See generally, *Praxis Properties, Inc. v. Colonial Sav. Bank, S.L.A.*, 947 F.2d 49, 62-63 (3d Cir. 1991). The purpose of FIRREA is to facilitate Congress' goal to, "efficiently and expeditiously resolve claims against a failed institution without any recourse to litigation." *Centennial Assocs. v. FDIC*, 927 F.Supp 806, 810 (D.N.J. 1996) (citing H.R. Rep. No 101-54(I), 101st Cong., 1st Sess. 418-19, reprinted in 1989 U.S. Code Cong. & Admin. News 86, 214-15). Pursuant to FIRREA, when the FDIC[7] is appointed as receiver of a closed depository institution, it succeeds to, "all rights, titles, powers and privileges of the

---

[7] Prior to 1996, the Resolution Trust Corporation (RTC) of the Federal Deposit Insurance Corporation (FDIC) was the primary government-owned management company that was entrusted with the statutory directive to liquidate the assets of failed financial institutions, primarily savings and loan associations. In December 1995, the duties of the RTC were given to the Savings Association Insurance Fund (SAIF) of the FDIC. 12 U.S.C. § 1441a(m)(1).

insured depository institution ...." 12 U.S.C. § 1821(d)(2)(A)(i). Subsequently, the FDIC may, "transfer any asset or liability of the institution ...." 12 U.S.C. § 1821(d)(2)(G)(i)(II).

For the purpose of creating an efficient process for handling claims against a failed lending institution, FIRREA requires the FDIC to provide notice of the institution's failure to the creditors of the institution and such notice directs those creditors to present their claims by a bar date specified on the notice. 12 U.S.C. § 1821(d)(3)(B). Claims that are not filed with the FDIC by the bar date are generally disallowed. 12 U.S.C. § 1821(d)(5)(C)(i). If a claim is timely filed, then the FDIC has 180 days from the filing date to either allow or disallow the claim. 12 U.S.C. § 1821(d)(5)(A). If the claim is not ruled upon within this time frame, or if it is denied, then the claimant has 60 days to seek administrative review or to pursue an action in district court. 12 U.S.C. § 1821(d)(6)(A). If the claimant, however, fails to exercise either option, then, "the claimant shall have no further rights or remedies with respect to such claim." 21 U.S.C. § 1821(d)(6)(B).

Because of the availability of this administrative procedure, FIRREA bars any court from exercising jurisdiction over:

 (i)  any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation [FDIC] has been appointed receiver, including assets which the Corporation [FDIC] may acquire from itself as such receiver; or

 (ii)  any claim relating to any act or omission of such institution or the Corporation as receiver.

12 U.S.C. § 1821(d)(13)(D). Section 1821(d)(6) provides that district courts only have jurisdiction, "over claims that have first been presented to the FDIC under its administrative review process." *Tri-State Hotels, Inc. v. FDIC*, 79 F.3d 707, 712 (8th Cir. 1996). The Third

11

Circuit has characterized the jurisdictional bar of these statutory provisions in 12 U.S.C. § 1821(d)(13)(D) as, "a statutory exhaustion requirement ...." *National Union Fire Ins. Co. v. City Sav., F.S.B.*, 28 F.3d 376, 383 (3d Cir. 1994); see also *Rosa v. RTC*, 938 F.2d 383, 391-92 (3d Cir. 1991), *cert denied*, 502 U.S. 981 (1991) (noting that the "statutory exhaustion requirement is indicated by the language 'except as otherwise provided in this subsection.' Subsection (d) of § 1821 provides for *de novo* district court jurisdiction only after the filing of a claim with, and the initial processing of that claim ...."). In other words, "in order to obtain jurisdiction to bring a claim in federal court, one must exhaust this administrative process by submitting the claim to the receiver in accordance with the administrative scheme for adjudicating claims detailed in § 1821(d)." *National Union Fire Ins. Co.*, 28 F.3d 376 at 383 (citing *Rosa*, 938 F.2d at 391). Thus, without exhausting the statutorily provided administration process, judicial review of claims against failed institutions is barred because a court will lack proper subject matter jurisdiction. See *Decrosta v. Red Carpet Inns Intern., Inc.*, 767 F.Supp 694 (E.D. Pa. 1991) (granting RTC's motion to dismiss where plaintiff failed to exhaust the administrative procedures under FIRREA before filing a claim against RTC, as receiver of a failed savings institution).

Additionally, Courts have had to deal with the issue of timing with regard to the exhaustion requirement. See e.g., *Brady Development Co., Inc. v. Resolution Trust Corp.*, 14 F.3d 998 (4th Cir. 1994) (holding that claimants who have an action pending in court against an institution that subsequently fails and is placed in receivership must avail themselves of FIRREA's administrative process in order to continue the action in district court); see also *Resolution Trust Corp. v. Mustang Partners*, 946 F.2d 103 (10th Cir. 1991) (finding that a pre-receivership claim must be filed with the RTC (FDIC) despite an already pending action by the claimants against the failed institution). The primary issue in these types of cases is whether a

12

claimant is subject to the § 1821(d) administrative procedure where an outstanding judicial proceeding commenced against a financial institution before it failed and was placed into receivership. For some claimants, who file pre-receivership claims in court against a financial institution, it has been found that exhaustion of the administrative procedures is still required once the institution falls into receivership under the FDIC and is subject to FIRREA. See *Resolution Trust Corporation v. Kolea*, 866 F. Supp. 197, 203 (E.D. Pa. 1994). Indeed, Courts in this Circuit have found,

> that a litigant pressing a claim against a savings and loan institution who is notified of (1) the appointment of the RTC as receiver of the institution, and (2) the pertinent RTC administrative processes for review of claims and the time period within which a pending claim should be submitted to the RTC, is then obligated to submit to the administrative claims process within the prescribed time period on pain of dismissal of the judicial claim by the court in which it was filed.

*Id.* at 203.

From the outset of this analysis, it should also be noted that the jurisdictional bar outlined by FIRREA applies not only to the receiver of a failed institution's assets, but also to third-party purchasers of the assets of the failed institution. See e.g., *In re Stewart*, 473 B.R. 612 (W.D. Pa. May 21, 2012) (noting that "the jurisdictional bar outlined by FIRREA applies not only to the receiver of a failed institution's assets, but also to third-party purchasers of the assets of the failed institution."). Allowing claimants to avoid the jurisdictional bar imposed by FIRREA simply by asserting their claims against a successor in interest, "would encourage the very litigation that FIRREA aimed to avoid." *Village of Oakwood v. State Bank and Trust Co.*, 539 F.3d 373 (6th Cir. 2008) (internal citations omitted).

Not only does the case *sub judice* involve various claims against a failed financial institution, but the suit involves claims that were asserted prior to the appointment of FDIC as

receiver for AmTrust Bank. Indeed, all claims asserted by Plaintiffs arise from the same alleged failure of Fidelity Closing Services, LLC to properly transfer the refinancing funds to Plaintiffs. By initially bringing these claims against AmTrust, Plaintiffs essentially present an argument that the owner of the mortgage and note, is responsible for the alleged misconduct of the closing agent. With the placement of AmTrust in receivership and the subsequent sale of the mortgage and note and the loan servicing rights, Plaintiffs alleged that Nationstar and Fannie Mae must be held liable for Fidelity Closing Service's failure to make these funds available.

While Plaintiffs have listed six different defendants in this cause of action, there is an underlying discrepancy over who is the proper party to be held accountable should these claims be found true. Assuming *arguendo*, however, for purposes of Defendants' instant motion that Nationstar and Fannie Mae would be the proper parties against whom Plaintiffs can seek a remedy for the alleged misconduct of the closing agent,[8] this Court must determine whether Plaintiffs can now properly bring these claims against Defendants in light of the application of FIRREA.[9]

---

[8] It should be noted that Defendants' primary argument raised in their motion to dismiss is that FIRREA protects them from causes of action alleged against AmTrust because the statute itself protects successors in interest to the failed banking institutions. It is also noteworthy that Defendant Nationstar alleges that it only purchased the servicing rights to Plaintiffs' Loan, "while Fannie Mae purchased the ownership of the Loan from the FDIC." (Doc. No. 5 at 7). This is an important distinction because Plaintiffs' claims are premised upon the assertion that AmTrust, as originator of the Loan, was liable for the misconduct of the closing agent, Fidelity Closing Services, LLC.

[9] While the Court's focus here is on the effect of FIRREA on these claims, it does note, however, that a legitimate question does exist as to whether Nationstar and Fannie Mae are even the proper defendants against whom Plaintiffs could possibly allege these claims. In other words, it would seem a very plausible question from the outset to determine 1) whether AmTrust, as the originator of the loan was liable for the misconduct of Fidelty-a now apparently defunct entity; and if so, 2) whether Nationstar and/or Fannie Mae contractually succeeded in the liabilities of AmTrust after acquiring certain assets from the FDIC and New York Community Bank as receiver for AmTrust. The Court takes no position on these questions, but notes that, as presented here, the primary issue as raised by Defendants in their motion to dismiss, is whether, assuming they are proper parties that can be held liable for the alleged misconduct, they are protected by the administrative shield under FIRREA.

14

Here, Plaintiffs originally instituted this case against AmTrust and other named defendants in October 2009, prior to the failure of AmTrust. When AmTrust failed in December 2009, it was placed into receivership pursuant to 12 U.S.C. § 1821(d)(2)(A)(i), and the FDIC subsequently sold most of the bank's assets to certain successors in interest, including the New York Community Bank. Additionally, the servicing rights to the Plaintiffs' Loan were transferred from the FDIC to Nationstar in September 2010, thus making them a successor in interest to AmTrust, but only in regard to the servicing rights.

Once the receivership had been put in place by the FDIC, though, the various sections of FIRREA were triggered. The statute's required claims process was one such section among others. Importantly, upon learning of Plaintiffs' outstanding lawsuit against AmTrust, the FDIC in February 2012 filed with the Court of Common Pleas of Cambria County a Notice of Improper Service. This notice provided both the Court and the Plaintiffs with the knowledge that AmTrust was no longer a functioning financial institution against which claims could be either brought or continued. More importantly, the FDIC sent notice to Plaintiffs informing them of the claims process pursuant to FIRREA, through which they could assert claims against the failed institution. What is interesting here, is that while there is no indication as to the date of the letter on which the FDIC provided notice to the Plaintiffs through their attorney, they did provide the option to the Plaintiffs to file a late claim, noting that while the March 10, 2010 claims bar date had passed, the "Receiver may, in its sole discretion, consider a **late filed claim** under certain circumstances." (Doc. No. 3-9 at 6). Additionally, with this letter, the FDIC provided a copy of the notice published in the Federal Register on May 11, 2011, which stated it had determined there were insufficient assets to satisfy claims against AmTrust. Thus, despite having instituted a pre-receivership claim in court against AmTrust, Plaintiffs were ultimately

15

given notice of the receivership and the claims process, as required under 12 U.S.C. § 1821(d)(3)(B)-(C). Accordingly, this Court finds that because such notice had been provided to Plaintiffs, it was therefore necessary for them to file an administrative claim with the FDIC in order to retain, or at least stay, the court proceedings against the receiver or any successor in interest to AmTrust's assets.

There is no indication, however, that Plaintiffs in fact filed a proof of claim—even a late filed claim—with the FDIC for review of the alleged misconduct on the part of AmTrust. While Plaintiffs allege in their Complaint Against Additional Defendant that the FDIC notified them that AmTrust no longer owned the mortgage and note in February 2010, they fail to assert any facts that indicate they filed a notice of claim with the FDIC pursuant to the administrative remedy provisions of FIRREA. (See Doc. No. 1-2 at 7-8). As Defendants have alleged, and provided accompanying documentation evidencing the fact that the FDIC notified Plaintiffs of the mandatory claims process to which the Plaintiffs never availed themselves, this Court must find that Plaintiffs in fact did not file any proof of claim with the FDIC regarding their allegations against AmTrust. Thus, pursuant to section 1821(d)(5)(C)(i), any claims against AmTrust, the FDIC, and any subsequent successors in interest, are permanently disallowed. For these reasons, the failure on the part of Plaintiffs to exhaust the available administrative remedies provided by the FDIC through FIRREA both bars claims being raised against Defendants and deprives this Court of jurisdiction in this case. See *Brady Development Co., Inc.*, 14 F.3d at 1006 (explaining that, "[e]xhaustion of administrative remedies is a requirement for efficiently administering the massive volume of claims. Numerous district courts have reached the same conclusion.").

The instant motion to dismiss for lack of subject matter jurisdiction is granted with respect to only Defendants Nationstar and Fannie Mae. Consequently, the Court will refrain from considering Defendants' Rule 12(b)(6) motion because it has determined that Plaintiffs cannot properly assert these claims in this Court against Nationstar and Fannie Mae as successors in interest to AmTrust. Thus, the claims asserted against Defendants Nationstar and Fannie Mae are dismissed, including Counts I, II, III, IV, V of Plaintiffs' Amended Complaint against Nationstar Mortgage, LLC; Counts VI, VII, VIII,[10] IX, and X of Plaintiffs' Amended Complaint against Nationstar Mortgage Properties, LLC; and Counts I, II, III, IV, and V against additional defendant Fannie Mae in Plaintiffs' Complaint Against Additional Defendant (Doc. No. 1-2). Additionally, this Court finds that Defendant AmTrust Financial Corporation, d/b/a AmTrust Bank is not currently functioning corporate entity; thus, any and all counts against Defendant AmTrust are dismissed in accordance with this memorandum. In turn, three counts remain in Plaintiffs' Amended Complaint: Count XI for conversion against Chicago Title Insurance Company, Count XII for vicarious liability against Fidelity National Financial, Inc., and Count XIII for conversion against Fidelity Closing Services, LLC.[11]

## B. Removal and Motion to Remand

In their Motion to Remand Case (Doc. No. 6), Plaintiffs assert that removal by defendant Fannie Mae was improper because neither federal subject matter jurisdiction pursuant to 12

---

[10] Count VIII is mislabeled as "Count VII" in Plaintiffs' Amended Complaint. (Doc No. 1-4 at 17).

[11] As will be determined below, Defendant Fidelity Closing Services, LLC has never been properly served nor appeared in this matter, and for these reasons, it is not a party to this matter and Count XIII of Plaintiffs' Amended Complaint is dismissed.

17

U.S.C. § 1723a(a) was mandated nor is there proper diversity jurisdiction pursuant to 28 U.S.C. § 1332 in this case.[12] (See id. at 1).

## 1. Federal Subject Matter Jurisdiction

Plaintiffs challenge Fannie Mae's basis for removal under 12 U.S.C. 1723a(a). (See id. at 2). Specifically, they contend that the language of the statute, "does not mandate removal of actions to the United States District Courts," but rather that the statute's plain language provides a permissive, and not mandatory, basis to be heard in any court of competent jurisdiction, whether it be state or federal. (Id.). While Defendant Fannie Mae offers a rejoinder to Plaintiffs' argument, noting that case law, "explicitly hold[s] that Section 1723a(a) does indeed provide for removal by Fannie Mae and the jurisdiction of the Federal Courts," and is consistent with the legislative history of the statute, this Court will refrain from determining whether remand is proper on this basis. (Doc. No. 11 at 5). Because this Court has determined that Defendants Nationstar and Fannie Mae are shielded by FIRREA from Plaintiffs' claims and are no longer part of this action, and because 12 U.S.C. 1723a(a) applies specifically to Fannie Mae, the Court finds that Fannie Mae's federal subject matter jurisdiction basis is no longer proper in this case. In light of this, the Court must now determine whether this case can survive Plaintiffs' motion to remand on the basis of diversity jurisdiction.

---

[12] Plaintiffs make an additional, related argument to the issue of lack of diversity jurisdiction; namely, that not all parties properly consented to Fannie Mae's removal notice. The Court will not address this contention for the same reasons it finds that Fidelity Closing Services, LLC was not properly served and made a party to this case. In essence, because this Court makes this finding, it is not then necessary for Fidelity Closing Services, LLC to have consented to Fannie Mae's removal.

## 2. Diversity Jurisdiction

Plaintiffs assert that complete diversity does not exist in this case because one of the Defendants is a citizen of Pennsylvania—as are the Plaintiffs. As such, they contend, the case should be remanded to the Court of Common Pleas of Cambria County, Commonwealth of Pennsylvania. (See Doc. No. 6 at 2). Specifically, Plaintiffs assert, "Fidelity Closing Services, LLC is currently registered with the Pennsylvania Department of State as a Pennsylvania Domestic Limited Liability Company ...." (Id. at 3). Despite this averment and Plaintiffs' continued listing of Fidelity Closing Services, LLC as a party to this action, this Court notes that Fidelity Closing Services, LLC has never appeared either in the Court of Common Pleas of Cambria County or in this Court. While this Court believes that Fidelity Closing Services, LLC is now a defunct entity due to its illegal activities and the subsequent imprisonment of its primary—and perhaps only—corporate officer, the Court will base its determination of the motion to remand, not on this basis, but rather the amount in controversy requirement of diversity jurisdiction.

Section 1332 of Title 28, United States Code, provides that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between—(1) citizens of different States." 28 U.S.C. § 1332(a)(1). As for the second requirement, the sum in controversy must be more than $75,000 in order for diversity jurisdiction to be possible. Here, after this Court's dismissal of the claims against Nationstar and Fannie Mae, there are only remaining counts against Chicago Title Insurance Company for conversion, Fidelity National Financial, Inc. for vicarious liability, and Fidelity Closing Services, LLC for conversion. The amount in controversy for each count is the sum of money Plaintiffs allege was absconded by Fidelity

Closing Services, LLC. The amount of $47,026.04 does not exceed the required $75,000 for proper diversity jurisdiction. For these reasons, the Court will grant Plaintiffs' motion to remand—but not upon any of the proffered bases put forth by Plaintiffs, but upon the basis that the parties have not met the requirements of 28 U.S.C. § 1332.

Furthermore, with regard to the status of Fidelity Closing Services, LLC in this case, the Court finds its necessary to make a determination as to their continued involvement going forward. Rather than delve into determining whether Fidelity Closing Services, LLC is still an active or now defunct entity, this Court will address the issue of whether the Defendant was properly served in this case. Under the Pennsylvania Rules of Civil Procedure, Rule 424 requires that, "[s]ervice of original process upon a corporation or similar entity shall be made by handing a copy to any of the following persons provided the person served is not a plaintiff in the action: (1) an executive officer, partner or trustee of the corporation … (2) the manager, clerk or other person … in charge … or (3) an agent authorized by the corporation …." Pa. R. Civ. P. 424. The rules specifically rule out service by mail of a complaint on a corporation. See *McElhone v. Beazer East, Inc.*, 2011 WL 1599644, Civ. A. No. 06-1111 (W.D. Pa. April 27, 2011) (noting that Plaintiff failed to properly serve defendant-corporation because Pennsylvania law requires the complaint to be hand delivered).

There is no indication here that Plaintiffs ever properly served Defendant Fidelity Closing Services, LLC by hand delivering the summons and complaint to the corporation. Indeed, Plaintiffs named Fidelity Closing Services, LLC as a defendant almost two and a half years after initiating this matter, and only upon the Court of Common Pleas' Order regarding preliminary objections (See Doc. No. 1-30 at 15); however, no proof of service was ever filed with regard to Fidelity Closing Services, LLC. (See Doc No. 1-5 at 48). Even further, Fidelity Closing

20

Services, LLC has not filed any responsive pleading or made any appearance in this case. Additionally, Plaintiffs have also attempted to send filings to the federal correctional institution, where the primary officer is now incarcerated, rather than to the listed registered office address, which has been alleged by Defendants to no longer be the proper address for the place of business of Fidelity Closing Services, LLC. More importantly, despite Plaintiffs attempts to serve the corporation, there is no indication they did so by the hand delivery, as required under the Pennsylvania Rules of Civil Procedure. For these reasons, this Court finds that Fidelity Closing Services, LLC has not been properly served in this proceeding and is not a party to the case. The remaining parties should accordingly amend the caption in this case to reflect this determination. Thus, the only remaining defendants to this action are Chicago Title Insurance Company and Fidelity National Financial, Inc. Additionally the only remaining counts are Counts XI (conversion) and XII (vicarious liability) of Plaintiffs' amended complaint.

The Court thus determines that the remaining counts against the remaining defendants shall be remanded to the Court of Common Pleas of Cambria County, Commonwealth of Pennsylvania.

## V. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss (Doc. No. 3) is **GRANTED** on the basis of lack of subject matter jurisdiction only. Plaintiffs' motion to remand is **GRANTED** on the basis of lack of diversity jurisdiction because of insufficient amount in controversy. An appropriate order follows.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

BRIAN J. KOSICKI,                          )
TONYA M. KOSICKI,                          )
                                           )
    Plaintiffs,                            )
                                           )  CIVIL ACTION NO. 3:12-176
v.                                         )  JUDGE KIM R. GIBSON
                                           )
NATIONSTAR MORTGAGE, LLC,                  )
CHICAGO TITLE INSURANCE                    )
COMPANY, FIDELITY NATIONAL                 )
FINANCIAL, INC., AMTRUST                   )
FINANCIAL CORPORATION d/b/a                )
AMTRUST BANK, FIDELITY CLOSING             )
SERVICES, LLC, FANNIE MAE,                 )
                                           )
    Defendants.                            )

## ORDER

**AND NOW**, this 28th day of May 2013, upon consideration of Defendants' Motion to Dismiss (Doc. No. 3), and in accordance with the Memorandum, it is **HEREBY ORDERED** that the motion is **GRANTED** with respect to all Counts asserted against Defendants Nationstar Mortgage, LLC, (Counts I, II, III, IV, and V of Plaintiffs' Amended Complaint), Nationstar Mortgage Properties, LLC, (Counts VI, VII, VIII, IX, and X of Plaintiffs' Amended Complaint), and Fannie Mae (Counts I, II, III, IV, and V of Plaintiffs' Complaint Against Additional Defendant). The Court also orders that Count XIII of Plaintiffs' Amended Complaint against Fidelity Closing Services, LLC be dismissed because of failure to properly serve Defendant in this case. Additionally, the Court finds that Defendant AmTrust Financial Corporation d/b/a AmTrust Bank is no longer a party in this case as determined in accordance with this Memorandum. The Court notes that there are only two counts remaining from Plaintiffs'

22

Amended Complaint (Counts XI and XII), with one count asserted against each of the two remaining Defendants, Chicago Title Insurance Company and Fidelity National Financial, Inc.

Additionally, upon consideration of Plaintiffs' Motion to Remand Case (Doc. No. 6), it is **HEREBY ORDERED** that the motion is **GRANTED** in accordance with this Memorandum. This matter shall be remanded to the Court of Common Pleas of Cambria County, Commonwealth of Pennsylvania.

**BY THE COURT:**

**KIM R. GIBSON,**
**UNITED STATES DISTRICT JUDGE**